IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION



IN THE MATTER OF AN APPLICATION )
BY THE UNITED STATES OF AMERICA )
FOR AN ADMINISTRATIVE SEARCH )
WARRANT PURSUANT TO TITLE 8, )
UNITED STATES CODE, SECTION 1357 )

MEMORANDUM IN SUPPORT FOR
APPLICATION FOR AN
ADMINISTRATIVE SEARCH WARRANT

MISC No. 3:19mj204 LRA

UNDER SEAL

TO SEARCH THE PREMISES:

PEARL RIVER FOODS
1012 Progressive Dr.
Carthage, MS 39051

## MEMORANDUM OF LAW

The United States of America respectfully submits this memorandum in support of its application to enter the premises of PEARL RIVER FOODS, 1012 Progressive Dr., Carthage, MS 39051 (hereafter "the PREMISES"), for the purpose of making such search as is reasonably necessary to locate aliens who are suspected of being within the United States without legal authority and who are therefore subject to removal proceedings pursuant to Sections 212(a), 237, and 240 of the Immigration and Nationality Act ("INA"), 8 U.S.C. Sections 1182(a), 1227 & 1229a, and to take such actions, with respect to those aliens, as authorized by Sections 103(a), 279, and 287 of the Immigration and Nationality Act, Title 8, United States Code, Sections 1103(a), 1329, and 1357.

## BACKGROUND

Pursuant to INA Section 287(a), 8 U.S.C. § 1357(a), Homeland Security Investigations Agents ("HSI") are empowered to investigate violations of the immigration laws and to detain,

interrogate, and arrest, without a warrant, any alien believed to be in the United States in violation of those laws[1]. As set forth in the accompanying affidavit of HSI Special Agent Anthony Todd Williams, Jr., ("Williams Aff."), HSI has reason to believe that aliens present in the United States without legal authority are working at the PREMISES. Accordingly, the Court should grant the application to enter and search the PREMISES for aliens who are in the United States in violation of the immigration laws.

## DISCUSSION

### A. Statutory Background and Legal Standards

Aliens who enter the United States by illegal means or who enter on certain nonimmigrant visas are not authorized to accept employment. *See* 8 C.F.R. §§ 214.1(e), 274a.12(c) (2008); *see also* 8 U.S.C. § 1324a(h)(3) (aliens not authorized to accept employment in the United States are those who are neither lawful permanent residents nor are authorized by statute or by the Attorney General to accept employment). Nonimmigrants who accept employment or who overstay their visas and aliens who have, entered the United States illegally or are otherwise unlawfully present in this country are subject to removal under the INA. *See* 8 U.S.C. §§ 1182(a)(6)(A), 1182(a)(9), 1227(a)(1)(B) &1227(a)(1)(C). Moreover, employers who knowingly hire and continue to employ aliens not authorized to work in the United States are in violation of INA Sections 274A(a)(1) and (2), 8 U.S.C. §§ 1324a(a)(1) & (2).

---

[1] The Homeland Security Act of 2002, Pub. L. 207-96 §§ 441,451, 471; 116 Stat. 2135, 2136-37 (2002), abolished the Immigration and Naturalization Service ("INS") and transferred responsibility for immigration enforcement to the Department of Homeland Security ("DHS"), of which ICE is a component. ICE was renamed as U.S. Immigration and Customs Enforcement, Homeland Security Investigations ("HSI").

Congress has charged the Attorney General (now the Secretary of Homeland Security) with the responsibility for implementing these and other provisions of the INA. *See* 8 U.S.C. § 1103(a). The Secretary of Homeland Security has in turn delegated his authority to ICE. *See* 8 C.F.R. §§ 1.1, 2.1 & 100.2 (2008); 28 C.F.R. §§ 0.105 & 0.108 (2008). Therefore, as the Government agency primarily vested with the administration of the immigration laws, ICE may seek and obtain authorization from the courts in order to search for aliens present in the United States without legal authority. *See Blackie's House of Beef, Inc. v. Castillo*, 659 F.2d 1211 (D.C. Cir.), *cert. denied*, 455 U.S. 940 (1981) ("[t]he Supreme Court has held that, in the civil area, administrative agencies . . . may obtain warrants when . . .searches will aid in the performance of regulatory functions"); *INS v. Delgado*, 466 U.S. 210, 217 & n.5 (1984) (INS agents acting under search warrants were "lawfully present" in factory). *See also* 8 U.S.C. §§ 1357(a)(1) & (2) (ICE empowered without warrant "to interrogate any alien or person believed to be an alien as to his right to be or to remain in the United States" and "to arrest any alien . . . [who is] in the United States in violation of any such law").

In *Blackie's House of Beef*, the leading case on the subject, the District of Columbia Circuit expressly sanctioned civil court orders permitting INS officers to enter premises where illegal aliens are believed to be present in order to question and, if necessary, arrest them. *See* 659 F.2d at 1226-28. In *Blackie's*, the D.C. Circuit upheld a warrant that permitted INS agents to enter a restaurant to locate, question, and arrest illegal aliens, even though the agents could not present evidence beforehand supporting an "individualized suspicion" that any specific named illegal alien was working there. *Id.* at 1225. The court, citing the difficulties inherent in identifying and locating illegal aliens, declined to require the INS to identify specific individuals working on the premises, and held that to do so would "require[] the INS to meet a standard of

probable cause so unrealistically restrictive as to cripple [its] statutory mandate to enforce the [INA]." *Id.* The District of Columbia Circuit thus recognized that the quantum of proof necessary to support a civil administrative warrant in such circumstances and meet Fourth Amendment requirements is significantly less than that required for a criminal warrant. *See Blackie's*, 659 F.2d at 1222 (a warrant to "search [a restaurant for illegal aliens suspected of working there] was ... unsuited to the application of traditional probable cause standards") (citing *Marshall v. Barlow's, Inc.*, 436 U.S. 307, 320 (1978)); *see also Int'l Molders' & Allied Workers' Local Union No. 164 v. Nelson*, 799 F.2d 547, 552 (9thCir. 1986)(agreeing with *Blackie's* that narrowing the field of potentially vulnerable persons to those whom INS agents "might reasonably believe to be aliens" satisfies the requirements of the Fourth Amendment even where the targeted persons are not identified by name.) (quoting *Blackie's*); *Kotler Industries. Inc. v. INS*, 586 F. Supp. 72, 75 (N.D. Ill. 1984) ("INS may obtain a search warrant by satisfying a more flexible standard of probable cause than that traditionally applied in criminal cases").

For this reason, the D.C. Circuit in *Blackie's* held that the INS's application for such a search warrant need not specifically name the suspected illegal aliens as long as the application and its supporting affidavits narrow the field of persons potentially vulnerable to the search to those whom agents reasonably believe to be illegal aliens. *See* 659 F.2d at 1226; *see also Ramirez v. Webb*, 835 F.2d 1153, 1158 (6th Cir. 1987) (holding that no constitutional or statutory right was violated by warrant application's failure to particularly describe subject aliens); *English v. Sava*, 571 F. Supp. 1029, 1039 (S.D.N.Y. 1983) ("names and precise physical descriptions [of aliens sought] are not the only indicia of specificity that will suffice to assure that the discretion exercised by the INS is adequately guided and focused to comport with the Fourth Amendment requirements").

Under the "more flexible definition of probable cause," *Blackie's*, 659 F.2d at 1222, ICE may obtain a search warrant by showing either (1) specific evidence of an existing violation at a particular place or (2) that the search will be conducted according to reasonable legislative or administrative standards, *id.* at 1222-23, so that "the warrant curb[s] the discretion of the INS agents sufficiently to guard against the exercise of unbridled discretion on the part of the INS." *Id.* at 1228. *See also Int'l Molders'*, 799 F.2d at 547 (terms of INS search warrant "must . . . prevent the agents from having uncontrolled discretion to rummage everywhere in search of seizable items once lawfully within the premises")(citing *Blackie's*).

Therefore, under *Blackie's*, an application for an ICE search warrant is "reasonable" by Fourth Amendment standards if it (1) adequately describes the place to be searched (*e.g.*, premises described and named by a street address); (2) reasonably limits the time within which the search may take place (*e.g.*, daylight hours within ten days of issuance of the warrant); (3) describes, as closely as reasonably possible, the persons sought (*e.g.*, "aliens in the United States without 'legal authority'"); and (4) restricts ICE agents to searching only those places where such persons are likely to hide or where records of their illegal employment may be kept. *See* 659 F.2d at 1214-16. Affidavits submitted in support of the warrant application in *Blackie's* provided the court with credible reasons to suspect that illegal aliens were on the subject premises. *Id.* at 1226.

### B. The Instant Application and Supporting Affidavit

The warrant application and supporting affidavit meet the legal requirements established by the District of Columbia Circuit in *Blackie's*. The affidavit gives the address of the PREMISES to be entered and a description of the PREMISES. *See* Williams's Aff. ¶ 1(a). The

proposed warrant also places appropriate limits on the search. It allows HSI agents a specific window (*i.e.*, between 6:00 a.m. and 6:00 p.m., *see* Proposed Warrant) in which to search the PREMISES, a limited time-frame when aliens subject to the warrant are expected to be present and working on the PREMISES. The warrant requires that the search be executed within ten days of its issuance. *See* Proposed Warrant.

The warrant properly "narrows down the field of potentially vulnerable persons," *Blackie's*, 659 F.2d at 1226, to only those illegal aliens believed to be working unlawfully at the PREMISES. Consequently, Special Agent Williams's affidavit satisfies the standard set forth in *Blackie's*, 659 F.2d at 1214-16. Like the affidavit submitted with the warrant application in that case, it contains specific evidence "suggesting that. . . persons working in. . .areas of the [establishment] [a]re possibly illegal aliens, and g[ives] credible reasons for the affiant['s] suspicions." *Id.* at 1226. In sum, the application satisfies the requirements for the issuance of the warrant, and accordingly should be granted.

## CONCLUSION

For the foregoing reasons, the Court should grant the application and issue the warrant. This the 7th day of August, 2019.

Respectfully submitted,

D. MICHAEL HURST, JR.
United States Attorney

By: /s/ Erin O. Chalk

ERIN O. CHALK (MSB No.101721)
Assistant United States Attorney
501 E. Court Street, Suite 4.430
Jackson, MS 39201
(601) 965-4480